**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In Re: | CASE NO.  23-61742-BEM |
| **ARC MANAGEMENT GROUP, LLC,** | **CHAPTER 11** |
| **Debtor.** | |

## NOTICE OF MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT, DEADLINE TO OBJECT, AND HEARING

Debtor ARC Management Group, LLC  has filed a Motion for Approval of Settlement Agreement on August 23, 2024. Pursuant to Second Amended and Restated General Order No. 24-2018, the Court may consider this matter without further notice or a hearing if no party in interest files a response or objection within twenty-one (21) days from the date of service of this notice. If you object to the relief requested in this pleading, you must timely file your objection objection with the Bankruptcy Clerk at the Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303, and serve a copy on the movant's attorney, Ceci Christy, Rountree Leitman Klein & Geer, LLC, 2987 Clairmont Road, Suite 350, Atlanta, Georgia 30329 and any other appropriate persons by the objection deadline. The response or objection must explain your position and be actually received by the Bankruptcy Clerk within the required time.

A hearing on the pleading has been scheduled for September 24, 2024. The Court will hold a hearing on the Motion for Approval of Settlement Agreement at 11:00 AM EDT on September 24, 2024 in Courtroom 1402 of the Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303, which may be attended in person or via the Court's Virtual Hearing Room. You may join the Virtual Hearing Room through the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the homepage of the Court's website, www.ganb.uscourts.gov, or the link on the judge's webpage, which can also be found on the Court's website. Please also review the "Hearing Information" tab on the judge's webpage for further information about the hearing. You should be prepared to appear at the hearing via video, but you may leave your camera in the off position until the Court instructs information on the judge's webpage.

If an objection or response is timely filed and served, the hearing will proceed as scheduled. If you do not file a response or objection within the time permitted, the Court may grant the relief requested without further notice and without holding the scheduled hearing provided that an order approving the relief requested is entered at least one business day prior to the scheduled hearing. If no objection is timely filed, but no order is entered granting the relief requested at least one business day prior to the scheduled hearing, the hearing will be held as scheduled.

Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

Dated: August 23, 2024                    **ROUNTREE LEITMAN KLEIN & GEER, LLC**

_/s/ Ceci Christy_
Will B. Geer, Ga. Bar No. 940493
Ceci Christy, Ga. Bar No. 370092
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
wgeer@rlkglaw.com
cchristy@rlkglaw.com
_Attorneys for Debtor_

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In Re: | CASE NO. 23-61742-BEM |
| **ARC MANAGEMENT GROUP, LLC,** | CHAPTER 11 |
| Debtor. | |

## MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT

The above captioned debtor and debtor-in-possession ARC Management Group, LLC ("**Debtor**"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("**Rule 9019**"), files this *Motion for Approval of Settlement Agreement* (the "**Motion**") by and between Debtor, Flock Financial, LLC ("**Flock**") and WebBank, Libertas Funding, LLC, SuperB Capital, LLC, Lendspark Corporation (collectively, the "**Libertas Parties**") and Samson MCA, LLC ("**Samson**"). In support hereof, Debtor shows as follows:

### JURISDICTION AND VENUE

1.       Debtor filed voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") on November 28, 2023 (the "**Petition Date**").

2.       No creditors' committee has been appointed in this case and no trustee or examiner has been appointed. Debtor remains debtor in possession.

3.       This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Debtor consents to the entry of final orders or judgments by the Bankruptcy Court.

## PROCEDURAL BACKGROUND

4.   Debtor filed on February 9, 2024, an adversary proceeding in this bankruptcy case styled *ARC Management Group, LLC v. Flock Financial, LLC et al.*, Adv. Proc. No. 24-05018-bem (Bankr. N.D. Ga.)  (the "**Adversary**") to resolve the disputes and other issues between twelve defendants who Debtor believed may assert security interests in Debtor's property.

5.   Flock and the Libertas Parties timely filed answers to Debtor's Complaint in this Adversary.

6.   Defendants True Business Funding, LLC, KYF Global Partners, LLC, Cheetah Capital, Funding Club, and One Funder did not file answers to Debtor's Complaint (the "**Defaulting Defendants**"). As a result, the Court entered default judgments against the Defaulting Defendants [Adversary Doc. No.  34].

7.   Samson did not file an answer to Debtor's Complaint in this Adversary but Samson and the Libertas Parties reached an agreement regarding Samson's claim as described in the Settlement and Release Agreement

8.   Green Note Capital Partners SPV, LLC ("**Green Note**") filed an answer to Debtor's Complaint in this Adversary. Green Note is an unsecured creditor but its claim amount is not resolved.

## FACTUAL BACKGROUND RELATING TO THE FLOCK AND LIBERTAS PARTIES

9.   Prior to the Petition Date, Debtor and Flock entered into a series of Joint Investment Agreements and related Security Agreements (collectively, the "**JIAs**"), which were executed between July 28, 2022, and February 27, 2023. Under each of the JIAs, Flock provided funding for a percentage of the purchase price of certain consumer debt portfolios (the "**Portfolios**"). Debtor also provided funding for the purchase of each of the Portfolios. Each JIA included a

security agreement that granted to Flock a security interest in each Portfolio to secure performance by Debtor under the JIAs. Debtor is the owner of the Portfolios.

10. Prior to the Petition Date, disputes arose between Debtor and Flock regarding the JIAs.

11. On August 8, 2023, Flock filed a lawsuit in a civil action styled *Flock Financial, LLC v. ARC Management Group, LLC*, Case No. 23-1-6126-69, Superior Court of Cobb County, Georgia (the "**Cobb County Action**"). On October 9, 2023, Debtor filed an answer and counterclaim in the Cobb County Action.

7.     Prior to the Petition Date, the Libertas Parties entered into various financing agreements with the Debtor prior to the Petition Date, including seven (7) Agreements of Sale of Future Receipts and/or Agreements for the Purchase and Sale of Future Receipts which the Libertas Parties contend were outstanding as of the Petition Date (the "**Libertas Agreements**"), and three (3) Business Loan and Security Agreements (the "**WebBank Agreements**"), and (ii) the Libertas Parties assert security interests in Debtor's assets, including the Portfolios, in connection with the Libertas Agreements and WebBank Agreements.

12. Samson has asserted a claim against Debtor which the Libertas Parties and Samson have agreed will be resolved as set forth in the Settlement and Release Agreement defined in paragraph 15 below.

13. During the course of the Bankruptcy Case, disputes have arisen among Debtor, Flock, and the Libertas Parties regarding their interests in Debtor's property, including the Portfolios.

14. On April 25, 2024, Debtor, Flock, and the Libertas Parties engaged in a successful mediation conducted by the Honorable Sage M. Sigler, United States Bankruptcy Judge. The mediation resulted in the Debtor, Flock, and the Libertas Parties reaching the terms memorialized

in the Settlement and Release Agreement (the "**Settlement Agreement**"), a true and correct copy of which is attached hereto as **Exhibit A**.[1]

## RELIEF REQUESTED AND NOTICE

15.     By this Motion, Debtor requests that the Court enter an order substantially in the form of the proposed order attached hereto as **Exhibit B** approving the Settlement Agreement and granting related relief.

16.     Debtor has given notice of this Motion to all creditors and the United States Trustee pursuant to Rule 9019.

## BASIS FOR RELIEF REQUESTED

17.     Debtor requests that the Court approve the Settlement Agreement pursuant to Rule 9019. Under Rule 9019, the Court has discretionary authority to approve a compromise of a controversy or dispute. *See Protective Comm. for Independent Stockholders of TNT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Continental Airlines, Inc. v. Airline Pilots Ass'n Infl. (In re Continental Airlines, Inc.)*, 907 F.2d 1500, 1508 (5th Cir. 1990).

18.     Whether to approve a proposed compromise is a matter within the sound discretion of the Bankruptcy Court and pre-trial settlements are favored by the courts. *See In re Munford, Inc.*, 97 F.3d 449, 455 (11th Cir. 1996); *In re AWECO, Inc.*, 725 F.2d 293, 297 (11th Cir. 1984); *In re Grot*, 291 B.R. 204, 208 (Bankr. M.D. Ga. 2003). Bankruptcy settlements are a "normal part of the bankruptcy process" and "desirable and wise methods of bringing to close proceedings otherwise lengthy, complicated and costly." *TNT Trailer*, 390 U.S. at 424 (1986).

19.     According to the Eleventh Circuit Court of Appeals, in deciding whether to approve a proposed settlement, a bankruptcy court should evaluate: (a) the probability of success in

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in the Settlement Agreement.

litigation, with due consideration for the uncertainty of the facts and the law; (b) the difficulties, if any, to be encountered in collecting on a judgment; (c) the complexity and likely direction of the litigation and any attendant expense, inconvenience and delay; and (d) the paramount interest of the creditors and a proper deference to their reasonable use. *See In re Justice Oaks II, Ltd*., 898 F.2d 1544, 1549 (11th Cir. 1990).

20.    Whether a proposed settlement is a product of an arms-length negotiation is a factor bearing on the wisdom of the compromise. *In re Cajun Elec. Power Co-Op, Inc.*, 119 F.3d 349, 356 (5th Cir. 1997); *In re Foster Mortgage Corp.*, 68 F.3d 914, 918 (5th Cir. 1995). Additionally, determining whether the settlement is in the best interest of the estate is an important consideration. *See, e.g., Cajun Elec.,* 119 F.3d at 356. Generally, the role of the Bankruptcy Court, when evaluating a proposed settlement is not to decide the issues in dispute by conducting a mini-trial. Instead, the bankruptcy court should determine whether the settlement is fair and equitable as a whole. *See, e.g., Cajun Elec.,* 119 F.3d at 355-56; *In re Joiner*, 319 B.R. 903, 907 (Bankr. M.D. Ga. 2004); *Grot*, 291 B.R. at 208 (2003).

21.    Here, Debtor has considered (i) the cost of litigation, (ii) the temporal and organizational strain on Debtor caused by the involvement of its officer, Bill Wilson, in the litigation, and (iii) other factors justifying the prompt and efficient resolution of the matter. Debtor has determined that the terms are fair to Debtor, Flock, and the Libertas Parties, and that the resolution of the Adversary resolves the most substantial litigation and claims involved in Debtor's bankruptcy case.

22.    Debtor believes that approval of the Settlement Agreement is in the best interest of the estate and creditors and is beneficial to the restructuring process.

WHEREFORE, having filed this Motion, Debtor prays the Motion be granted, the Settlement Agreement be approved, and that the Court grant Debtor such other and further relief as it may deem just and proper.

Dated: August 23, 2024     **ROUNTREE LEITMAN KLEIN & GEER, LLC**

              */s/ Ceci Christy*
              Will Geer, Ga. Bar No. 940493
              Ceci Christy, Ga. Bar No. 370092
              Century Plaza I
              2987 Clairmont Road, Suite 350
              Atlanta, Georgia 30329
              (404) 584-1238 Telephone
              wgeer@rlkglaw.com
              cchristy@rlkglaw.com
              *Attorneys for Debtor*

## <u>Exhibit A</u>

**Settlement Agreement**

## SETTLEMENT AND RELEASE AGREEMENT

**THIS SETTLEMENT AND RELEASE AGREEMENT** (the "Agreement") is entered into this 16th day of August, 2024, by and among ARC MANAGEMENT GROUP, LLC, in its capacity as debtor-in-possession ("**Debtor**"), FLOCK FINANCIAL, LLC ("**Flock**"), and WEBBANK ("**WebBank**"), LIBERTAS FUNDING, LLC ("**Libertas**"), SUPERB CAPITAL, LLC ("**SuperB**"), and LENDSPARK CORPORATION ("**Lendspark**"; together with WebBank, Libertas, and SuperB, the "**Libertas Parties**"). The foregoing are collectively referred to herein as the "**Parties**" and each a "**Party**". SAMSON MCA, LLC ("**Samson**") is a signatory to and bound by this Agreement with respect only to Paragraph 7 hereof.

## RECITALS

**WHEREAS,** on November 28, 2023 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under chapter 11 of title 11, of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Georgia (the "**Bankruptcy Court**"), initiating the bankruptcy case captioned *In re ARC Management Group, LLC*, Case No. 23-61742-bem (the "**Bankruptcy Case**"); and

**WHEREAS,** (i) prior to the Petition Date, Debtor and Flock entered into a series of Joint Investment Agreements and related Security Agreements (collectively, the "**JIAs**"), which were executed between July 28, 2022, and February 27, 2023, (ii) under the JIAs, Flock funded a percentage of the purchase price of certain consumer debt portfolios (the "**Portfolios**") and the Debtor funded the remainder of the purchase price, and (iii) Flock asserts a security interest in the Portfolios in connection with the JIAs; and

**WHEREAS,** prior to the Petition Date, disputes arose between Debtor and Flock regarding the JIAs, and Flock filed a lawsuit against Debtor styled *Flock Financial, LLC v. ARC Management Group, LLC*, Case No. 23-1-6126-69, Superior Court of Cobb County, Georgia (the "**Cobb County Action**"); and

**WHEREAS,** (i) the Libertas Parties entered into various financing agreements with the Debtor prior to the Petition Date, including seven (7) Agreements of Sale of Future Receipts and/or Agreements for the Purchase and Sale of Future Receipts which the Libertas Parties contend were outstanding as of the Petition Date (the "**Libertas Agreements**"), and three (3) Business Loan and Security Agreements (the "**WebBank Agreements**"), and (ii) the Libertas Parties assert security interests in the Debtor's assets, including the Portfolios, in connection with the Libertas Agreements and WebBank Agreements; and

**WHEREAS,** pursuant to the terms of the Master Servicing Agreement dated February 1, 2024 (the "**MSA**"), between Debtor and Allgate Financial LLC ("**Allgate**") approved by the Bankruptcy Court on February 7, 2024 (the "**MSA**") and the Final Order Authorizing Debtor to Use Cash Collateral and Granting Adequate Protection (the "**Cash Collateral Order**") entered on February 7, 2024, Debtor has maintained a segregated debtor-in-possession bank account at Wells Fargo ending in 9737 known as the "ARC Debtor in Possession Portfolio Trust Account" (the "**DIP Segregated Account**"); and

WHEREAS, the MSA provides that Allgate is solely responsible for servicing the Portfolios, and the Cash Collateral Order requires that Allgate and Debtor are required to deposit all Net Proceeds (as defined in the Cash Collateral Order) of all collections of the Purchased Portfolios into the DIP Segregated Account, and the Cash Collateral Order further provides that, on a monthly basis, Debtor may transfer ten percent (10%) of the Net Proceeds from the DIP Segregated Account into the Debtor in Possession Operating Account at Wells Fargo ending in 0253 (the "**DIP Operating Account**") to be used only in accordance with the revised budget attached as Exhibit A to the Cash Collateral Order; and further, to date, ARC has not transferred this ten percent (10%) of the Net Proceeds to its DIP Operating Account; and

WHEREAS, (i) under the terms of the MSA, Debtor retained for collection twenty percent (20%) of the Portfolio accounts (the "**ARC Serviced Portfolio Accounts**"), (ii) the gross collections of the ARC Serviced Portfolio Accounts are deposited into the DIP Operating Account, and (iii) from the gross collections, Debtor retains its collection commission and then deposits the net collections into the DIP Segregated Account; and

WHEREAS, (i) in the course of the Bankruptcy Case, certain disputes have arisen among the Debtor, Flock, and the Libertas Parties regarding, among other things, the relative priorities of the security interests asserted by Flock and the Libertas Parties, and (ii) to resolve these disputes and other issues regarding creditors the Debtor believed may assert security interests, on February 9, 2024, the Debtor filed an adversary proceeding styled *ARC Management Group, LLC v. Flock Financial, LLC et al.*, Adv. Proc. No. 24-05018-bem (Bankr. N.D. Ga.) (the "**Adversary Proceeding**"); and

WHEREAS, Flock and the Libertas Parties timely filed answers to Debtor's Complaint in the Adversary Proceeding; and

WHEREAS, on April 25, 2024, the Parties engaged in mediation conducted by the Honorable Sage M. Sigler, United States Bankruptcy Judge, which resulted in the Parties reaching the terms memorialized herein;

WHEREAS, operating reports submitted along with the Allgate reporting data submitted to the court show that the net collections for all Portfolio Accounts from January 2024 through June 2024 are $672,825.80; and

WHEREAS, Debtor did not deposit into the DIP Segregated Account the complete net proceeds from its portion of the collections of the ARC Serviced Portfolio Accounts for the months of January 2024 through June 2024, resulting in a shortfall that totals $102,658.82 for these months (the "Jan-June Shortfall"); and

WHEREAS, the Parties now desire to resolve their disputes;

NOW THEREFORE, for and in consideration of the promises, performance of the terms and conditions recited herein, the releases contained herein and other good and valuable

consideration, the receipt and adequacy of which are hereby acknowledged, the Parties hereby agree as follows:

## AGREEMENT

1.      **Recitals**.  The foregoing recitals are confirmed by the Parties as true and correct and are incorporated herein by reference.  The recitals are a substantive, contractual part of this Agreement.

2.      **Bankruptcy Court Approval; Effective Date**.

(a) The Parties acknowledge that this Agreement is subject to the Bankruptcy Court's approval pursuant to Fed. R. Bankr. P. 9019 ("**Rule 9019**") and, notwithstanding anything else contained herein, shall not be effective until an order granting such approval has been entered by the Court and has become final and nonappealable.

(b) Within five (5) days after the date on which all Parties have executed this Agreement, Debtor shall file a motion with the Bankruptcy Court, in form and substance acceptable to the Parties, for entry of an Order, also in form and substance acceptable to the Parties, approving the terms of this Agreement.  The Debtor shall give notice of the 9019 Motion and any hearing thereon as required under the Federal Rules of Bankruptcy Procedure.

(c) The "**Effective Date**" of this Agreement is the date that is one (1) day after an order approving this Agreement becomes final and non-appealable pursuant to Fed. R. Bankr. P. 8002.

3.      **Portfolio and Third-Party Collections**.

(a) The Parties agree that, from the Effective Date of this Agreement and until the Plan Effective Date (as defined herein) has occurred, Allgate shall continue to service and manage the Portfolios and Allgate and Debtor shall each deposit all Net Proceeds from the Portfolios (the "**Portfolio Funds**") into the DIP Segregated Account as provided under the MSA and Cash Collateral Order.

(b) Following the Plan Effective Date, Debtor shall continue to service the ARC Serviced Portfolio Accounts as defined above.  Debtor shall continue to receive its commission directly from the proceeds of the collections of the ARC Serviced Portfolio Accounts. All remaining proceeds shall be deposited directly into the Plan Portfolio Disbursement Account  (defined below).

(c) The Parties acknowledge that the Debtor services accounts ("**Third-Party Accounts**") that are not part of the Portfolios (the gross proceeds thereof, "**Third-Party Funds**"). The Parties acknowledge and agree that the Debtor shall continue to service the Third-Party Accounts in the ordinary course of Debtor's business as the Reorganized Debtor as that term is defined in the Plan. The parties also agree that neither Flock nor Allgate

have a security interest or any other interest in the Third-Party Accounts and Third-Party Funds

4.    **Allowed Claims**.  The Parties acknowledge and agree that Flock and the Libertas Parties shall have allowed secured claims in the Bankruptcy Case as follows:

(a) Flock shall have an allowed secured claim in the amount of twelve million dollars ($12,000,000.00) secured by the Portfolios and the proceeds thereof (the "**Flock Claim**").

(b) The Libertas Parties shall have an allowed secured claim in the amount of twelve million dollars ($12,000,000.00) secured by (i) the Portfolios and proceeds thereof and (ii) all other assets of the Debtor, including, without limitation, the Third-Party Accounts and proceeds thereof (the "**Libertas Claim**").

(c) For purposes of this Agreement and the Bankruptcy Case, the Libertas Claim shall be deemed paid in full when the Libertas Parties have been paid a total of nine million dollars ($9,000,000.00) on the Libertas Claim.  This Paragraph 4(c) shall not apply upon the dismissal or conversion to Chapter 7 of the Bankruptcy Case.

(d) The Parties each agree not to seek disallowance of, or otherwise object to, the Flock Claim or the Libertas Claim as set forth in this Paragraph 4(d).

5.    **Chapter 11 Plan**.  By no later than twenty (20) days after the date on which all Parties have executed this Agreement, Debtor shall file and diligently seek confirmation of a plan of reorganization (the "**Plan**").   Debtor agrees that it will not file or seek confirmation of any plan except in accordance with this Agreement or the written consent of both Flock and the Libertas Parties (such plan an "**Unauthorized Plan**"), and further agrees that (i) filing an Unauthorized Plan or (ii) failing to timely file a Plan as set forth in this Agreement would constitute cause for dismissal or conversion to chapter 7 of the Bankruptcy Case under Section 1112(b) of the Bankruptcy Code.  The Flock Claim and Libertas Claim shall be deemed to be impaired with respect to confirmation of the Plan pursuant to Section 1124 of the Bankruptcy Code.  Flock and the Libertas Parties each agree not to object to confirmation of the Plan and to vote in favor of confirmation of the Plan, provided that the Plan shall contain the following terms and provided that the Plan is not otherwise inconsistent with the terms of this Agreement:

(a) The effective date of the Plan (the "**Plan Effective Date**") shall occur no more than thirty (30) days after the entry of an order by the Bankruptcy Court confirming the Plan.

(b) On the Plan Effective Date, all Portfolio Funds collected before the Plan Effective Date, including all amounts in the DIP Segregated Account, shall be deposited into the ARC Plan Portfolio Disbursement Trust Account to be established by Debtor (the "**Plan Portfolio Disbursement Account**").

(c) Allgate shall serve as the disbursing agent (in such capacity, the "**Disbursing Agent**") with respect to the Plan Portfolio Disbursement Account and shall be compensated for its services under the terms of the MSA.

(d) Except as provided in Paragraph 5(e), on the Plan Effective Date, and on the tenth (10th) day of each month following the Plan Effective Date, the Disbursing Agent shall disburse all Portfolio Funds on deposit in the Plan Portfolio Disbursement Account as follows:

    (i)       Forty-five percent (45%) to Flock, until the Flock Claim has been paid in full;

    (ii)      Forty-five percent (45%) to the Libertas Parties, until the Libertas Claim has been paid in full pursuant to Paragraph 4(c) of this Agreement; and

    (iii)     Ten percent (10%) to the Debtor.

For the avoidance of doubt, following the payment in full of either the Flock Claim or Libertas Claim, whichever may occur first, the Disbursing Agent shall disburse ninety percent (90%) of all Portfolio Funds to either Flock or the Libertas Parties, as applicable, until such Party's claim has also been paid in full. ARC shall continue to receive ten percent (10%) of all Portfolio Funds. In the event both the Libertas Claim and Flock Claim are paid in full and collections continue on the Portfolio Accounts, all collections shall then be disbursed to the Reorganized Debtor from the Plan Portfolio Disbursement Account.

(e) The Jan-June Shortfall and any additional shortfall in Debtor's deposits in the Segregated Account after June 30, 2024 (collectively, the "Total Shortfall") shall be cured by the Disbursing Agent disbursing to Flock and Libertas in equal parts the Debtor's 10 percent share of Portfolio Funds until the Total Shortfall has been cured. The Disbursing Agent shall not disburse any funds to the Debtor from the DIP Segregated Account until the Debtor has paid the amount necessary to cure the Total Shortfall. For avoidance of doubt, nothing in this paragraph shall excuse the Debtor from complying with the Cash Collateral Order through the Effective Date nor limit recourse of Flock and Libertas for any violation of the Cash Collateral Order occurring from July 1, 2024, through the Effective Date.

(f) In the event that one or more sales of the Portfolios, or any portion of the Portfolios, is approved pursuant to Section 363 of the Bankruptcy Code, the proceeds of such sales shall be distributed in the percentages set forth in Paragraph (f) of this Agreement.

(g) If, at any time after the Plan Effective Date, net proceeds derived from the Portfolios are less than $100,000.00 for two consecutive calendar months, the Disbursing Agent shall be authorized to market the Portfolios for sale; provided, however, that any sale of the Portfolios shall be subject to (i) the express written approval of Flock and the Libertas Parties and (ii) Bankruptcy Court approval under Section 363 of the Bankruptcy Code. The proceeds from such sale, less the costs of sale, shall be paid to Flock, Libertas, and ARC according to their respective percentages of forty-five percent (45%), forty-five percent (45%), and ten percent (10%).

(h) On the Plan Effective Date, and on the tenth (10th) day of each month following the Plan Effective Date, the Reorganized Debtor shall disburse to Libertas from the Third-Party Funds as follows, until the Libertas Claim has been paid in full:

    (i)    The Libertas Parties shall not receive any disbursements or payments from collections of the Third-Party Funds up to the first $200,000.00 collected during any month;

    (ii)    The Libertas Parties shall receive seven percent (7%) of all Third-Party Funds collected during the month prior to each disbursement date in excess of $200,001.00 but less than $350,000.00;

    (iii)    The Libertas Parties shall receive nine percent (9%) of all Third-Party Funds collected during the month prior to each disbursement date in excess of $350,001.00 but less than $550,000.00;

    (iv)    The Libertas Parties shall receive eleven percent (11%) of all Third-Party Funds collected during the month prior to each disbursement date in excess of $550,001.00 but less than $650,000.00;

    (v)    The Libertas Parties shall receive twelve percent (12%) of all Third-Party Funds collected during the month prior to each disbursement date in excess of $650,001.00.

For the avoidance of doubt, Reorganized Debtor shall not pay any prepetition unsecured creditors except as provided for in the Plan until the Libertas Claim has been paid in full. The Libertas Parties shall not receive in any month any payments or disbursements from Reorganized Debtor's ten percent (10%) received from the Plan Portfolio Disbursement Account or from commissions received on collections of the ARC Serviced Portfolio Accounts, but Debtor shall account for such amounts on reasonable request from Libertas.

(i) All other allowed secured claims asserted against the Debtor or any of the Debtor's property, including, without limitation, the Portfolios and/or Third-Party Accounts, shall be subordinate with respect to payment under the Plan to payment in full of the Flock Claim and Libertas Claim, except that the Flock Claim shall only be paid from the Portfolio Funds as Flock does not have a security interest in any Third-Party Accounts or the proceeds thereof.

(j) Beginning on the Plan Effective Date, and on the first day of each calendar quarter thereafter, Debtor will provide evidence satisfactory to Flock and the Libertas Parties in their reasonable discretion that it maintains each and every license necessary to collect debts from consumers who reside in states listed in a matrix to be attached to the Plan (the "**Licensing Validation**"). In the event Debtor fails to timely provide the Licensing Validation, or such Licensing Validation is insufficient (a "**Licensing Default**"), Flock or the Libertas Parties shall notify Debtor in writing of such failure (any such notice a "**Licensing Default Notice**"). Debtor shall have until ninety (90) days after the receipt of any Licensing Default Notice to cure any Licensing Default. Debtor's failure to timely cure a Licensing Default as set forth herein shall constitute cause for Flock or the Libertas Parties to obtain relief from the automatic stay, which

relief may include authority to sell the Portfolios under the provisions of the Uniform Commercial Code.

6.    **Dismissal or Conversion to Chapter 7**.   In the event the Bankruptcy Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code for any reason, including the Debtor's failure to obtain confirmation of the Plan (as defined herein), Debtor shall no longer be entitled to receive any Portfolio Funds, and Flock and the Libertas Parties shall each be entitled to fifty percent (50%) of Portfolio Funds.

7.    **Resolution of Samson Claim**.   Samson has asserted a claim against the Debtor which the Libertas Parties and Samson have agreed will be resolved as set forth herein.   The Libertas Parties will make payments directly to Samson totaling $135,000.00 (the "**Samson Payments**") solely from distributions to the Libertas Parties of Third-Party Funds as set forth in Paragraph 4(f) of this Agreement.   Samson acknowledges and agrees that, in consideration for the arrangement between it and the Libertas Parties described herein, (a) it shall have no allowed claim against the Debtor or the Debtor's bankruptcy estate or Bill Wilson or Thresa Wilson (b) it waives and releases all claims it now has or may have against the Parties, except that it may enforce this Paragraph 7 solely against the Libertas Parties, and (c) it will not oppose confirmation of the Plan and will vote for the Plan.

8.    **Cancellation of UCC-1s Against Debtor Affiliated Entities**.   Within thirty (30) days of the Effective Date of this Agreement, the Libertas Parties shall cause to be released or cancelled all UCC-1 filings against all entities affiliated with Debtor, specifically those UCCs recorded against ABI Holdings, HealthTech Receivables, Inc., WilZara Property Management, LLC, and Patient Account Services.

9.    **Definitions Applicable to Releases**.

(a)  "Debtor Released Parties" and "Debtor Releasors", as context requires, means and refers, collectively, each of the Debtor, the Debtor's estate, and their respective past, present, and future affiliates, subsidiaries, parents, members, managers, officers, directors, shareholders, partners, administrative agents, servicers, agents, employees, attorneys, heirs, assigns, representatives, predecessors and successors.

(b)  "Flock Released Parties" and "Flock Releasors," as context requires, means and refers to Flock, together with its past, present, and future affiliates, subsidiaries, parents, members, managers, officers, directors, shareholders, partners, administrative agents, servicers, agents, employees, attorneys, heirs, assigns, representatives, predecessors and successors.

(c)  "Libertas Released Parties" and "Libertas Releasors", as context requires, means and refers to, collectively, each of the Libertas Parties and their respective past, present, and future affiliates, subsidiaries, parents, members, managers, officers, directors, shareholders, partners, administrative agents, servicers, agents, employees, attorneys, heirs, assigns, representatives, predecessors and successors.

(d) "<u>Receiver Released Parties</u>" means and refers to, collectively, each of the Receiver and Allgate and their respective past, present, and future affiliates, subsidiaries, parents, members, managers, officers, directors, shareholders, partners, administrative agents, servicers, agents, employees, attorneys, heirs, assigns, representatives, predecessors and successors, but solely in their respective capacities under the Receivership Order.

10.    **Release by Debtor**. On the Effective Date, each of the Debtor Releasors shall be deemed to release, acquit, and forever discharge each of the Flock Released Parties and the Libertas Released Parties from any and all claims, causes of action, suits, damages, judgments, liens, losses, expenses, recoupments, and demands whatsoever in law and in equity, contract or tort that the Debtor Releasors had, now have, or may later have or claim to have against any of the Flock Released Parties and Libertas Released Parties, individually or collectively, whether known or unknown, asserted or unasserted, fixed or contingent, liquidated or unliquidated, now accrued or that may accrue hereafter, that arose or transpired at any time from the beginning of time through the Effective Date, asserted in, arising from or in any way related to the JIAs, the Portfolios, the Cobb County Action, the Receiver Order, the Libertas Agreements, the WebBank Agreements, the Bankruptcy Case, the Adversary Proceeding, and the business operations of the Debtor Releasors.  The Debtor Releasors covenant and agree not to sue or take any action against any of the Flock Released Parties or Libertas Released Parties for any claim released under this <u>Paragraph 10</u>.  Nothing herein shall release any of the Flock Released Parties or Libertas Released Parties from their obligations under this Agreement or be deemed to impair, in any way, the Debtor Releasors' rights to enforce this Agreement subject to its terms.

11.    **Release by Flock**. On the Effective Date, each of the Flock Releasors shall be deemed to release, acquit, and forever discharge each of the Debtor Released Parties and the Libertas Released Parties from any and all claims, causes of action, suits, damages, judgments, liens, losses, expenses, recoupments, and demands whatsoever in law and in equity, contract or tort that the Flock Releasors had, now have, or may later have or claim to have against any of the Debtor Released Parties and Libertas Released Parties, individually or collectively, whether known or unknown, asserted or unasserted, fixed or contingent, liquidated or unliquidated, now accrued or that may accrue hereafter, that arose or transpired at any time from the beginning of time through the Effective Date, asserted in, arising from or in any way related to the JIAs, the Portfolios, the Cobb County Action, the Receiver Order, the Libertas Agreements, the WebBank Agreements, the Bankruptcy Case, and the Adversary Proceeding.  The Flock Releasors covenant and agree not to sue or take any action against any of the Debtor Released Parties or Libertas Released Parties for any claim released under this <u>Paragraph 11</u>.  Nothing herein shall release any of the Debtor Released Parties or Libertas Released Parties from their obligations under this Agreement or be deemed to impair, in any way, the Flock Releasors' rights to enforce this Agreement subject to its terms.

12.    **Release by Libertas**. On the Effective Date, each of the Libertas Releasors shall be deemed to release, acquit, and forever discharge each of the Debtor Released Parties and the Flock Released Parties from any and all claims, causes of action, suits, damages, judgments, liens, losses, expenses, recoupments, and demands whatsoever in law and in equity, contract or tort that the Libertas Releasors had, now have, or may later have or claim to have against any of the Debtor Released Parties and Flock Released Parties, individually or collectively, whether known or

unknown, asserted or unasserted, fixed or contingent, liquidated or unliquidated, now accrued or that may accrue hereafter, that arose or transpired at any time from the beginning of time through the Effective Date, asserted in, arising from or in any way related to the JIAs, the Portfolios, the Cobb County Action, the Receiver Order, the Libertas Agreements, the WebBank Agreements, the Bankruptcy Case, and the Adversary Proceeding. The Libertas Releasors covenant and agree not to sue or take any action against any of the Debtor Released Parties or Flock Released Parties for any claim released under this <u>Paragraph 12</u>. Nothing herein shall release any of the Debtor Released Parties or Flock Released Parties from their obligations under this Agreement or be deemed to impair, in any way, the Libertas Releasors' rights to enforce this Agreement subject to its terms.

13.    **Release of Receiver and Allgate**. On the Effective Date, each of the Parties shall be deemed to release, acquit, and forever discharge each of the Receiver Released Parties from any and all claims, causes of action, suits, damages, judgments, liens, losses, expenses, recoupments, and demands whatsoever in law and in equity, contract or tort that the Parties had, now have, or may later have or claim to have against any of the Receiver Released Parties, whether known or unknown, asserted or unasserted, fixed or contingent, liquidated or unliquidated, now accrued or that may accrue hereafter, that arose or transpired at any time from the beginning of time through the Effective Date, asserted in, arising from or in any way related to the JIAs, the Portfolios, the Cobb County Action, the Receiver Order, the Bankruptcy Case, and the Adversary Proceeding. Each of the Parties covenants and agrees not to sue or take any action against any of the Receiver Released Parties for any claim released under this <u>Paragraph 13</u>.

14.    **Non-Disparagement**. The Parties to this Agreement agree not to disparage each other or Bill Wilson or Thresa Wilson to business vendors or others in any written or spoken public forum, including all electronic, internet, or social media forums or review platforms. Examples of social media forums contemplated by this agreement include but are not limited to: Facebook pages and groups, Google or Yelp reviews, similar review site webpages, Twitter and other microblogging webpages, and Instagram or other picture sharing webpages. Nothing in this provision prevents the Parties from providing truthful information about each other in response to a court order or subpoena, or during any federal, state, or local governmental body investigation or proceeding.

15.    **Representations and Warranties**. Each of the Parties makes the following representations and warranties, and agrees and acknowledges that these and all other representations and warranties contained in this Agreement are material to this Agreement:

(a)  Each person signing this Agreement on behalf of a Party is fully competent to execute this Agreement and has all necessary authority to bind the Party on whose behalf they are signing to the promises, covenants, representations, warranties, terms and conditions set forth herein.

(b)  This Agreement is not being made or entered into with the actual intent to hinder, delay or defraud any entity or person.

(c) No representations regarding the nature and extent of legal liability of any of the Parties has induced any Party to enter into this Agreement.

(d) Each of the Parties is the current respective owner of the claims released herein, and there has been no assignment, sale, or other transfer or disposition of any interest therein prior to the Effective Date.

(e) Each Party has been represented by counsel in the negotiation of this Agreement and the Agreement has been reviewed by the Parties' respective counsel.

(f) The consideration given and received by each Party in respect of the promises, covenants, and obligations made under this Agreement represents reasonably equivalent value therefor.

16.    **Attorneys' Fees and Expenses**.  Each Party shall bear their own attorneys' fees and expenses in connection with this Agreement and the subject matter thereof.  Nothing herein shall be construed to waive or release any Party's ability to seek attorneys' fees and expenses, as available under applicable law, in connection with the enforcement of this Agreement or any matter not released hereunder.

17.    **Governing Law**.  This Agreement, including its interpretation and enforcement, shall be governed by the laws of the State of Georgia, without regard to any state's choice of law rules or the provisions of the JIAs, the Libertas Agreements, or the WebBank Agreements.

18.    **Jurisdiction of Bankruptcy Court**. The Parties hereby acknowledge and agree that the Bankruptcy Court shall have exclusive jurisdiction to enforce and adjudicate any dispute arising under this Agreement.  The provisions of this Paragraph 18 shall survive the closure of the Bankruptcy Case and/or the termination of this Agreement.

19.    **Drafting**.  This Agreement was negotiated and drafted with the full participation of the Parties and their respective counsel. In the event that it is determined that any ambiguity exists in this Agreement, any such ambiguity shall not be resolved or otherwise construed against any particular Party by virtue of the fact that it participated in the drafting, but rather, shall be resolved by a fair reading of the intent of the Parties as established herein.

20.    **Successors and Assigns**.  The Parties agree that the terms, covenants, and obligations set forth herein shall inure to the benefit of and be binding upon each of their respective agents, attorneys, officers, directors, members, managers, employees, representatives, administrators, executors, successors and assigns.

21.    **Headings**.  The headings herein have been used to designate the various sections of this Agreement and are solely for convenience and ease of reference and shall not be construed in any event or manner as interpretive of this Agreement.

22.    **Modifications**.  Any future waiver, alteration, amendment or modification of any of the provisions of this Agreement shall not be valid or enforceable unless in writing and signed

by all Parties, it being expressly agreed that this Agreement cannot be modified orally, by course of dealing or by implied agreement.

23.    **Severance**.  If any provision of this Agreement is found to be contrary to law or void, the remainder of the Agreement shall be considered valid and enforceable and shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

24.    **Multiple Counterparts**.  This Agreement may be signed in multiple counterparts, each of which will be deemed an original and all of which taken together will constitute one instrument binding upon the Parties, notwithstanding that each Party is not a signatory to the same counterpart.  Any scanned PDF or facsimile counterparts shall be considered originals.

25.    **Strict Compliance**.  The failure of any Party at any time or times to demand strict performance by the other Parties of any of the terms, covenants, or conditions set forth herein shall not be construed as a continuing waiver or relinquishment thereof.  Any Party may, at any time, demand strict and complete performance by the other Parties of the terms, covenants, and conditions of this Agreement.

26.    **No Admission**.  Nothing herein shall be deemed or construed to be an admission or acknowledgment of any liability by or of any Party.

27.    **Notice**.  Any notice required to be provided pursuant to this Agreement shall be provided by electronic mail and/or overnight delivery to counsel for the Parties as follows:

|  |  |
|---|---|
| If to the Debtor: | Rountree Leitman Klein & Geer, LLC<br>Century Plaza I, Suite 350<br>2987 Clairmont Road<br>Atlanta, Georgia 30329<br>Attn: Ceci Christy, Esq.<br>cchristy@rlkglaw.com |
| If to Flock: | Nelson Mullins Riley & Scarborough, LLP<br>201 17th Street NW, Suite 1700<br>Atlanta, Georgia 30363<br>Attn: Gregory M. Taube, Esq.<br>greg.taube@nelsonmullins.com |
| If to the Libertas Parties: | Weir Greenblatt Pierce LLP<br>1339 Chestnut Street, Suite 500<br>Philadelphia, Pennsylvania 19107<br>Attn: Jeffrey S. Cianciulli, Esq.<br>jcianciulli@wgpllp.com |
| If to Samson: | Samson MCA, LLC<br>17 State Street, Suite 630<br>New York, New York 10004 |

28.  **Agreement Binding on Future Trustees**.  For the avoidance of doubt, the Parties agree that the Agreement shall be binding on any trustee appointed under the Bankruptcy Code, including without limitation Sections 701 or 1104 of the Bankruptcy Code.

29.  **Survival**.  This Agreement shall survive, and its terms shall remain binding on the Parties, in the event the Bankruptcy Case is converted to a case under Chapter 7 of the Bankruptcy Code or is dismissed.

30.  **Entire Agreement**.  The Parties agree that this Agreement sets forth the entire agreement of the Parties in relation to its subject matter and that no prior oral or written matters extrinsic to this Agreement shall have any force or effect.

[REMAINDER OF PAGE LEFT BLANK]

[SIGNATURES ON FOLLOWING PAGES]

IN WITNESS WHEREOF, the Parties have set their hands and seals as of the Agreement Date above.

**ARC MANAGEMENT GROUP, LLC**, in its capacity as debtor in possession

By:___*William Wilson*_____
Name:_____
Title:___CEO_____

**FLOCK FINANCIAL, LLC,** a Delaware limited liability company

By:_____
Name:_____
Title:_____

**WEBBANK**, a **[_____]**

By:_____
Name:_____
Title:_____

**LIBERTAS FUNDING, LLC,** a **[Delaware]** limited liability company

By:_____
Name:_____
Title:_____

**SUPERB CAPITAL, LLC,** a **[Delaware]** limited liability company

By:_____
Name:_____
Title:_____

**SAMSON MCA, LLC**, a **[Delaware]** limited liability company **(SOLELY WITH RESPECT TO PARAGRAPH 7**

By:_____
Name:_____
Title:_____

**LENDSPARK CORPORATION,** a **[Delaware]** corporation

By:_____
Name:_____
Title:_____

IN WITNESS WHEREOF, the Parties have set their hands and seals as of the Agreement Date above.

**ARC MANAGEMENT GROUP, LLC,** in its capacity as debtor in possession

By:_____
Name:_____
Title:_____

**FLOCK FINANCIAL, LLC,** a Delaware limited liability company

By:_____
Name: Jeffrey M. Shaver
Title: Chief Financial Officer

**WEBBANK,** a [_____]

By:_____
Name:
Title:

**LIBERTAS FUNDING, LLC,** a [Delaware] limited liability company

By:_____
Name:
Title:

**SUPERB CAPITAL, LLC,** a [Delaware] limited liability company

By:_____
Name:
Title:

**SAMSON MCA, LLC,** a [Delaware] limited liability company **(SOLELY WITH RESPECT TO PARAGRAPH 7**

By:_____
Name: Steven MARLOUTH
Title: CEO

**LENDSPARK CORPORATION,** a [Delaware] corporation

By:_____
Name: Salman Vakil
Title: President

IN WITNESS WHEREOF, the Parties have set their hands and seals as of the Agreement Date above.

**ARC MANAGEMENT GROUP, LLC**, in its capacity as debtor in possession

By:_____
Name:_____
Title:_____

**FLOCK FINANCIAL, LLC,** a Delaware limited liability company

By:_____
Name: Jeffrey M. Shaver
Title:   Chief Financial Officer

**WEBBANK**, a [_____]

By:_____
Name: Randy Saluck
Title: CEO

**LIBERTAS FUNDING, LLC,** a [Delaware] limited liability company

By:_____
Name:  Randy Saluck
Title: CEO

**SUPERB CAPITAL, LLC,** a [Delaware] limited liability company

By:_____
Name:  Randy Saluck
Title: CEO

**SAMSON MCA, LLC**, a [Delaware] limited liability company (**SOLELY WITH RESPECT TO PARAGRAPH 7**

By:_____
Name:
Title:

**LENDSPARK CORPORATION**, a [Delaware] corporation

By:_____
Name:
Title:

**Exhibit B**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| In Re: | **CASE NO. 23-61742-BEM** |
| **ARC MANAGEMENT GROUP, LLC,** | **CHAPTER 11** |
| Debtor. | |

**ORDER GRANTING
MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT**

Upon consideration of the motion (the "**Motion**")[1] of Debtor for Approval of its Settlement and Release Agreement between Debtor and Flock Financial LLC ("**Flock**") and WebBank, Libertas Funding, LLC, SuperB Capital, LLC, and Lendspark Corporation (collectively, the "**Libertas Parties**") and Samson MCA, LLC ("**Samson**"); and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; the Court having considered the Motion and all other matters of record, including the lack of a response to the Motion; and sufficient notice being given and no further notice or hearing being required; the Court finds that good cause exists to grant the relief requested in the Motion. Accordingly,

It is hereby **ORDERED** as follows:

1.      The Motion is GRANTED.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

2.      Debtor is authorized to enter into the Settlement Agreement attached to the Motion

as **<u>Exhibit A</u>**, which is hereby APPROVED.

3.      This Order shall be effective and enforceable immediately upon entry hereof.

4.      Debtor is authorized and empowered to take all actions necessary to implement the

relief granted in this Order.

5.      This Court shall retain jurisdiction with respect to all matters arising from or related

to the implementation or interpretation of this Order.

### ### END OF ORDER ###

**Prepared and presented by:**

**ROUNTREE LEITMAN KLEIN & GEER, LLC**

<u>*/s/ Ceci Christy*</u>
Ceci Christy, Ga. Bar No. 370092
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
cchristy@rlkglaw.com
*Attorneys for Debtor*

**<u>Distribution List</u>**

Ceci Christy
ROUNTREE LEITMAN KLEIN &GEER, LLC
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329

Office of the U.S. Trustee
362 Richard B. Russell Bldg.
75 Ted Turner Drive, SW
Atlanta, GA 30303

Gregory M. Taube
Nelson Mullins Riley & Scarborough LLP
201 17th Street, NW, Suite 1700
Atlanta, Georgia 30363


Michael D. Robl
Maxwell W. Bowen
ROBL LAW GROUP, LLC
3754 Lavista Road, Suite 250
Tucker, Georgia 30084
(404) 373-5153 Telephone