UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| ARC MANAGEMENT GROUP, LLC, | : | CASE NO. 23-61742 - BEM |
| | : | |
| DEBTOR. | : | |
| | : | |
| MARY IDA TOWNSON, | : | |
| UNITED STATES TRUSTEE, | : | |
| | : | |
| MOVANT, | : | |
| | : | |
| v. | : | CONTESTED MATTER |
| | : | |
| ARC MANAGEMENT GROUP, LLC, | : | |
| | : | |
| RESPONDENT. | : | |

**UNITED STATES TRUSTEE'S MOTION TO DISMISS OR CONVERT CASE OR FOR AN ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE**

Mary Ida Townson, United States Trustee for Region 21, in furtherance of her administrative responsibilities imposed pursuant to 28 U.S.C. § 586(a) and 11 U.S.C. § 1112(b), files this Motion to Dismiss or Convert Case or for an Order Directing the Appointment of a Chapter 11 Trustee in the above-captioned case and in support therefor states as follows:

1. The Court has jurisdiction of this matter under 28 U.S.C. §1334(a) and (b), 28 U.S.C. §157(a) and (b)(1). This is a core proceeding under 28 U.S.C. §157(b)(2)(A) and (B).

2. Pursuant to 28 U.S.C. § 586(a)(3) and (4), the United States Trustee's duties include supervising the administration of chapter 11 cases and monitoring deposits or investments under section 345 of title 11. The United States Trustee files this request in furtherance of her duties and responsibilities pursuant to 28 U.S.C. § 586 and 11 U.S.C. § 307.

**I.     Dismissal or Conversion to Chapter 7**

3.     ARC Management Group, LLC (the "Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 et seq., on November 28, 2023. Debtor is an accounts receivable collection company with clients in the legal, healthcare, and retail fields. (Dkt. No. 12, pg. 2) Debtor's sworn schedules show assets valued at $14,390,594.11 (Dkt. No. 56, pg. 9), secured debts totaling $19,938,508.41 (Dkt. No. 109, pg. 30), and unsecured debts totaling $463,582.04. (Dkt. No. 109, pg. 30)

   a. **Discrepancy in Monthly Operating Reports and Bank Balances**

4.     On February 7, 2024, the Court entered a final order authorizing Debtor to use cash collateral and granting adequate protection (the "Cash Collateral Order"). (Dkt. No. 117) The Cash Collateral Order provided that Debtor may employ Allgate Financial, LLC ("Allgate") in the ordinary course of business to manage the servicing and collection of the portfolios that Debtor purchased between July 2022, and April 2023 (the "Purchased Portfolios").

5.     Flock Financial, LLC ("Flock") asserts a security interest in the Purchased Portfolios, particularly the revenue generated by the collections of the Purchased Portfolios as described in the Joint Investment Agreements by and between Debtor and Flock. (Dkt. No. 117, pg. 2)

6.     The Cash Collateral Order provided that Allgate would deposit the net proceeds (less fees and expenses) of its collections on the Purchased Portfolios into Debtor's Wells Fargo account ending in 9737 (the "ARC Debtor in Possession Portfolio Trust Account"). (Dkt. No. 117, pg. 3) The Cash Collateral Order then authorized Debtor to transfer 10% of the net proceeds from the ARC Debtor in Possession Portfolio Trust Account to its operating account each month to use according to the cash collateral budget. (Dkt. No. 117)

7. On June 5, 2024, Debtor filed a monthly operating report for the period ending on April 30, 2024. (Dkt. No. 153) The report included a copy of the April bank statement for the ARC Debtor in Possession Portfolio Trust Account. (Dkt. No. 173-1, pgs. 1-4) The attached bank statement listed an ending balance of $373,121.31 as of April 30, 2024.

8. The United States Trustee receives a monthly banking and bonding report from authorized depositories, including Wells Fargo, that provides ending balances for debtor-in-possession bank accounts. The April monthly report from Wells Fargo listed an ending balance of $258,754.55 in the ARC Debtor in Possession Portfolio Trust Account as of April 30, 2024 – $114,366.80 less than what Debtor's bank statement showed.

9. On August 1, 2024, Debtor filed a monthly operating report for the period ending on May 31, 2024. (Dkt. No. 173) The report included a copy of the May bank statement for the ARC Debtor in Possession Portfolio Trust Account. (Dkt. No. 173-3, pgs. 1-4) The attached bank statement listed an ending balance of $393,121.31 as of May 31, 2024.

10. The May monthly report from Wells Fargo listed an ending balance of $258,754.55 in the ARC Debtor in Possession Portfolio Trust Account as of May 31, 2024 – $134,366.80 less than what Debtor's bank statement showed.

11. On July 22, 2024, Debtor filed a monthly operating report for the period ending on June 30, 2024. (Dkt. No. 166) The report included a copy of the June bank statement for the ARC Debtor in Possession Portfolio Trust Account. (Dkt. No. 166-1, pgs. 1-4) The attached bank statement listed an ending balance of $423,121.31 as of June 30, 2024.

12. The June monthly report from Wells Fargo listed an ending balance of $250,254.55 in the ARC Debtor in Possession Portfolio Trust Account as of June 30, 2024 – $172,866.80 less than what Debtor's bank statement showed.

13. On August 20, 2024, Debtor filed a monthly operating report for the period ending on July 31, 2024. (Dkt. No. 180) The report included a copy of the July bank statement for the ARC Debtor in Possession Portfolio Trust Account. (Dkt. No. 180-1, pgs. 1-4) The attached bank statement listed an ending balance of $570,166.98 as of July 31, 2024.

14. The July monthly report from Wells Fargo listed an ending balance of $362,285.22 in the ARC Debtor in Possession Portfolio Trust Account as of July 31, 2024 – $207,881.76 less than what Debtor's bank statement showed.

15. It appears Debtor altered its April, May, June, and July 2024, bank statements to show more funds in the ARC Debtor in Possession Portfolio Trust Account than the account had on the corresponding monthly operating report.

16. Based on a comparison of the April, May, June, and July 2024 operating reports and the monthly reports provided by Wells Fargo, it appears that Debtor altered the ARC Debtor in Possession Portfolio Trust Account statements to make it appear that it was complying with the terms of the Cash Collateral Order when it was not.

   b. **Failure to Respond to Requests for Discovery and Attend 2004 Examination**

17. On September 19, 2024, the United States Trustee filed a motion for an order authorizing a Rule 2004 Examination of Debtor (the "2004 Order"). (Dkt. No. 191) On September 25, 2024, the Court entered an amended order authorizing a Rule 2004 Examination of Debtor to be held on October 17, 2024, or at such date, time, and place as the parties may agree. (Dkt. No. 201)

18. The 2004 Order also communicated formal requests for documents and information to Debtor, including requests for:

a) Copies of unredacted statements for all Debtor's accounts (personal, business, checking, savings, money market, etc.) for the period November 1, 2023, through August 31, 2024, including a check register detailing the check number, date, payee, amount, and purpose of payment and an explanation for all deposits which are not self-explanatory (i.e., payroll direct deposit); and

b) All non-privileged documents and communications submitted, received, collected, or reviewed to prepare the Debtor's monthly operating reports filed in this Bankruptcy Case.

19. On October 16, 2024, Counsel for Debtor informed counsel for the United States Trustee that Debtor's representative, Bill Wilson, was unavailable for the 2004 Examination scheduled for the following day.

20. As of the filing of this motion, Debtor has not provided any response to the request for documents and information contained in the 2004 Order and has not proposed an alternative date for the 2004 Examination.

c. **Withdrawal of Counsel**

21. On October 6, 2024, the Law Firm of Rountree Leitman Klein & Geer, LLC ("Debtor's Counsel") filed a Motion to Withdraw as Debtor's Counsel (the "Motion to Withdraw"). (Dkt. No. 207). The Motion to Withdraw came before the Court for hearing on October 22, 2024. At the hearing, the Court continued the matter to October 30, 2024, and ordered the Debtor to retain substitute counsel no later than October 29, 2024. (Dkt. No. 106)

22. If the Motion to Withdraw is granted, Debtor will be an artificial entity that is not represented by an attorney.

23. Because Debtor will be an artificial entity, it will not be able to represent itself in

this proceeding, nor may its officers appear before this court on its behalf unless they are licensed attorneys. *See Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985); *National Indep. Theatre Exhibitors, Inc. v. Buena Vista Distrib. Co.*, 748 F.2d 602, 609 (11th Cir. 1984).

### d. Failure to Propose a Plan

24. Debtor's case has been pending in chapter 11 for over eleven months.

25. The exclusive period for Debtor to file a plan was first set to expire on March 27, 2024, but Debtor has sought and obtained three extensions of this deadline. (Dkt. Nos. 132, 154, and 192) The exclusive period for Debtor to file and solicit acceptances of a chapter 11 plan was most recently extended to November 1, 2024. (Dkt. No. 200)

26. Upon information and belief, Debtor has not obtained substitute counsel and will likely be unable to propose a plan of reorganization by the November 1, 2024, deadline.

27. 11 U.S.C. § 1112(b), in pertinent part, provides as follows:

> [T]he court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause. . . .
>     (4) For purposes of this subsection, the term "cause" includes –
>         (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;

28. Debtor's failure to confirm a plan constitutes cause to dismiss or convert the case under 11 U.S.C. § 1112(b)(4)(J).

### e. Failure to File Monthly Operating Reports

29. Bankruptcy Rule 2015(a)(6) and Operating Guidelines of the United States Trustee require Debtor to file monthly operating reports.

30. Debtor is required to file an operating report for each month or partial month its case is pending.

31. The electronic docket maintained by the Clerk of Court reflects Debtor has failed to file an operating report for August and September 2024. The October 2024 operating report is due November 21, 2024.

32. 11 U.S.C. § 1112(b), in pertinent part, provides as follows:

[T]he court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause. . . .
    (4) For purposes of this subsection, the term "cause" includes –
        (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter; . . . .

33. Debtor's failure to timely file monthly operating reports is in violation of its statutory obligations under 11 U.S.C. § 704(a)(8), made applicable to it as debtor in possession by 11 U.S.C. § 1107, and constitutes cause for dismissal of the case under 11 U.S.C. § 1112(b)(4)(F).

## II. Appointment of a chapter 11 trustee

34. In the alternative, the United States Trustee seeks the appointment of a chapter 11 trustee to replace Debtor's current management. Section 1104(a) provides in pertinent part as follows:

At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States Trustee, and after notice and a hearing, the court shall order the appointment of a trustee–

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, . . . ; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

### a. Cause Exists for the Appointment of a Trustee

35. Section 1104(a)(1) compels the appointment of a trustee when the Court finds fraud, dishonesty, incompetence, gross mismanagement, or other cause. *In re V Savino Oil & Heating Co.*, 99 B.R. 518, 525-26 (Bankr. E.D.N.Y. 1989).

36. "The willingness of Congress to leave a debtor in possession is premised on the expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee. And if the debtor in possession defaults in this respect, Section 1104(a)(1) commands that the stewardship of the reorganization effort must be turned over to an independent trustee." *In re Marvel*, 140 F.3d 463, 474 (3d Cir. 1998) (quoting *In re V Savino Oil & Heating Co.*, 99 B.R. at 526).

37. The list of wrongs constituting "cause" is non-exclusive; thus "[f]actors relevant to the appointment of a trustee under § 1104(a)(1) include: conflicts of interest, including inappropriate relations between corporate parents and the subsidiaries; misuse of assets and funds; inadequate record keeping and reporting; various instances of conduct found to establish fraud or dishonesty; and lack of credibility and creditor confidence." *In re Altman*, 230 B.R. 6, 16 (Bankr. D. Conn. 1999), *aff'd in part, vacated in part*, 254 B.R. 509 (D. Conn. 2000).

38. The "court need not find any of the enumerated wrongs to find cause for appointing a trustee. *Oklahoma Refining Co. v. Blaik (In re Oklahoma Refining Co.)*, 838 F.2d 1133, 1136 (10th Cir. 1988); *Savino Oil*, 99 B.R. at 525 ("the grounds for appointing a reorganization trustee are not even limited to the derelictions specifically enumerated"); 11 U.S.C. § 102(3) ("including" is "not limiting").

39. Additional factors which courts consider in determining whether "cause" exists for the appointment of a trustee include, "(1) materiality of the misconduct; (2) evenhandedness or

lack of same in dealings with insiders or affiliated entities vis-à-vis other creditors or customers; (3) the existence of prepetition voidable preferences or fraudulent transfers; (4) unwillingness or inability of management to pursue estate causes of action; (5) conflicts of interest on the part of management interfering with its ability to fulfill fiduciary duties to the debtor; (6) self-dealing by management or waste or squandering of corporate assets." *In re YC Atlanta Hotel, LLC*, 630 B.R. 348, 366 (Bankr. N.D. Ga. 2021) (citing *In re Intercat, Inc.*, 247 B.R. 91, 921 (Bankr. S.D. Ga. 2000)).

40. Additionally, "appointment of a trustee under § 1104(a)(1) is appropriate where the debtor has diverted funds." *In re PHDC, LLC*, 2004 WL 5846712 at *3 (Bankr. N.D. Ga. April 28, 2004).

41. Debtor appears to have altered ARC Debtor in Possession Portfolio Trust Account statements to make it look as though it was complying with the terms of the Cash Collateral Order when it was not. Debtor's fraud and dishonesty is cause for the appointment of a chapter 11 trustee.

### b. Appointment of a Trustee is in Best Interests of Creditors.

42. The appointment of a trustee under section 1104(a)(2) employs a flexible approach which allows the Court to appoint a trustee when it would serve the best interests of the estate, its equity security holders and its creditors, even if there is no finding of fraud, dishonesty, incompetence, or gross mismanagement. *See In re Sharon Steel Corp.*, 871 F.2d 1217 (3d Cir. 1989). Courts examine whether the benefits of a trustee will outweigh the costs to the estate. *In re PDHC, LLC*, 2004 WL 5846712, at *3 (Bankr. N.D. Ga. April 28, 2004).

43. Under §1104(a)(2), courts look to the practical realities and necessities. *In re Euro-American Lodging Corp.*, 365 B.R. 421, 427 (Bankr. S.D.N.Y. 2007). Under section 1104(a)(2), the Court should examine such factors as: (a) the trustworthiness of the debtor; (b) the

prospects for rehabilitation of the debtor under present management; (c) the creditors' confidence, or lack thereof, in the present management; (d) the benefits of appointing a trustee balanced against the cost of appointment, and (e) whether the trustee could accomplish the goals of a chapter 11 plan more efficiently and effectively than the debtor in possession. *In re Ionosphere Clubs*, 113 B.R. 164, 167-168 (Bankr. S.D.N.Y. 1990), *see also, Savino Oil* 99 B.R. at 525 (section 1104(a)(2) determination entails exercise of discretionary powers).

44. Here, creditors and the bankruptcy case will benefit from the appointment of a chapter 11 trustee because the case can remain in chapter 11 and the settlement agreements that were previously negotiated can be revaluated in light of Debtor's misconduct.

45. The investigation into Debtor's wrongdoing will also be more robust under the direction of a chapter 11 trustee because he or she is a disinterested third-party.

WHEREFORE, the United States Trustee prays for (i) the entry of an order dismissing or converting this case to chapter 7, or (ii) the entry of an order directing the appointment of a chapter 11 trustee; and (ii) such further relief as the court deems appropriate.

Dated: October 29, 2024

MARY IDA TOWNSON
UNITED STATES TRUSTEE
REGION 21

By:_____/s/_____
Alan Hinderleider
Georgia Bar No. 938543
United States Department of Justice
Office of the United States Trustee
362 Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, Georgia 30303
(404) 331-4464
Alan.Hinderleider@usdoj.gov

## CERTIFICATE OF SERVICE

  This is to certify that on October 29, 2024, I electronically filed the foregoing *United States Trustee's Motion to Dismiss or Convert Case or for an Order Directing the Appointment of a Chapter 11 Trustee* using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following party who has appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

| | |
|---|---|
| Maxwell W. Bowen | max@roblgroup.com |
| Ceci Christy | cchristy@rlkglaw.com, wgeer@rlkglaw.com, willgeer@ecf.courtdrive.com, 2836@notices.nextchapterbk.com, 6717577420@filings.docketbird.com; emiller@rlkglaw.com, swenger@rlkglaw.com, jdowardclay@rlkglaw.com |
| James W. Hays | beau@hayspotter.com |
| Adam Herring | adam.herring@nelsonmullins.com, ilene.maccioli@nelsonmullins.com |
| Jeffrey W. Melcher | jmelcher@dickinsonwright.com |
| Stephen M. Montgomery | smontgomery@dickinson-wright.com |
| Evan L. Moscov | evan.moscov@moscovlaw.com |
| Michael D. Robl | michael@roblgroup.com, max@roblgroup.com, lelena@roblgroup.com |
| William A. Rountree | wrountree@rlkglaw.com,6717577420@filings.docketbird.com, wgeer@rlkglaw.com 2836@notices.nextchapterbk.com, willgeer@ecf.courtdrive.com, emiller@rlkglaw.com, emillerrlkg@ecf.courtdrive.com, tdaniel@rlkglaw.com |
| Stephen Wayne Sather | ssather@bn-lawyers.com |
| Gregory M. Taube | greg.taube@nelsonmullins.com, linnea.hann@nelsonmullins.com, ilene.maccioli@nelsonmullins.com |

I further certify that on this day, I caused a copy of this document to be served via United States First Class Mail, with adequate postage prepaid on the following parties at the address shown for each.

ARC Management Group, LLC
1825 Barrett Lakes Blvd., N.W.
Suite 505
Kennesaw, GA 30144

/s/
Alan Hinderleider
Georgia Bar No. 938543
United States Department of Justice
Office of the United States Trustee
362 Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, Georgia 30303
(404) 331-4464
Alan.Hinderleider@usdoj.gov