IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | : |
| | : CHAPTER 11 |
| ARC MANAGEMENT GROUP, LLC, | : |
| | : Case No. 23-61742 - BEM |
| Debtor. | : |

**EMERGENCY MOTION BY CHAPTER 11 TRUSTEE FOR AN ORDER CONVERTING THE CHAPTER 11 CASE OF THE DEBTOR TO A CASE UNDER CHAPTER 7 AND REQUEST FOR EXPEDITED HEARING**

**COMES NOW** S. Gregory Hays, as Chapter 11 Trustee ("**Trustee**") for the bankruptcy estate (the "**Estate**") of ARC Management Group, LLC, Debtor (the "**Debtor**") in the above captioned case (the "**Case**") and, by and through counsel, hereby files this *Emergency Motion by Chapter 11 Trustee for an Order Converting the Chapter 11 Case of the Debtor to a Case under Chapter 7 and Request for Expedited Hearing* (the "**Motion**"). In support of the Motion, the Trustee respectfully shows the Court as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**PROCEDURAL BACKGROUND**

2. On August 7, 2024, Flock Financial, LLC ("**Flock**") filed a *Motion to Appoint Chapter 11 Trustee* due to alleged mismanagement of funds by the Debtor. Such motion was subsequently withdrawn.

3. After irregularities were discovered in certain financial information reported by the Debtor, on November 7, 2024, the Debtor entered into a *Consent Order Directing the Appointment of a Trustee* [Doc. No. 224] and on November 12, 2024, the United States Trustee filed a *Notice*

*of Appointment of Chapter 11 Trustee and Setting Bond* [Doc. No. 227] pursuant to which S. Gregory Hays was appointed as the Chapter 11 Trustee for the Bankruptcy Estate of the Debtor.

4.      On November 14, 2024, the Court entered an order [Doc. No. 231] approving the appointment of the Trustee as Chapter 11 Trustee in this Case. The Trustee is duly qualified to act in such capacity. Since being appointed, on behalf of the estate, the Trustee employed certain professionals approved by the Court to assist the Trustee in the administration of the Case.

## SUBSTANTIVE BACKGROUND

5.      The business of the Debtor is the collection of past due consumer medical accounts receivable incident to which the Debtor receives revenue from: 1) commissions for collecting accounts of clients (the "**Commission Accounts**"); and 2) past due consumer accounts that are owned by the Debtor (the "**Portfolios**"). While the Debtor routinely uses agencies for the Commission Accounts, such agencies are able to handle the collection of the Portfolios that require the assistance of Allgate (as defined below) to avoid draining the financial resources of the Debtor from the cost of additional in-house collection.

6.      Flock asserts a security interest in the Portfolios owned by the Debtor, particularly in the revenue generated from collections. Between July 28, 2022, and February 27, 2023, Debtor and Flock entered into a series of Joint Investment Agreements and related Security Agreements (collectively, the "**JIAs**") incident to which Flock provided funding for a percentage of the purchase price of the Portfolios. Flock was purportedly granted a security interest in the Portfolios arising from the JIAs.

7.      WebBank ("**WebBank**"), Libertas Funding, LLC ("**Libertas**"), SuperB Capital, LLC ("**SuperB**" or "**Libertas**"), and Lendspark Corporation (collectively with WebBank, Libertas, and SuperB, the "**Libertas Parties**") also assert a security interest in the Portfolios among

other assets of the Debtor. Prior to the Petition Date, the Libertas Parties entered into various financing agreements with the Debtor, including seven (7) Agreements of Sale of Future Receipts and/or Agreements for the Purchase and Sale of Future Receipts that the Libertas Parties contend were outstanding as of the Petition Date (the "**Libertas Agreements**") and three (3) Business Loan and Security Agreements (the "**WebBank Agreements**"). The security interest asserted by the Libertas Parties purportedly arises from the Libertas Agreements and WebBank Agreements.

8. After the Debtor failed to issue timely monthly payments and disputes arose regarding the JIAs, Flock initiated litigation on August 8, 2023, in Cobb County (the "**Cobb County Action**") incident to which Irwin Bernstein (the "**Receiver**") was appointed as receiver over the Portfolios.

9. On November 28, 2023 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code.

10. Prior to the appointment of the Trustee, the Court approved the use of cash collateral pursuant to certain interim orders [Doc. Nos. 27, 33, 70 and 75] and a final order [Doc. Nos. 117 and 121] (the "**Cash Collateral Order**").

11. Also, prior to the appointment of the Trustee, Debtor, Flock, and the Receiver negotiated a settlement memorialized in the Settlement and Release Agreement (the "**Settlement**"). On August 23, 2024, Debtor filed a motion [Doc. No. 181] to approve the Settlement. The Settlement entered prior to the appointment of the Trustee required the Debtor to execute a Master Servicing Agreement with Allgate Financial LLC ("**Allgate**") under the terms of which Allgate would collect and service the charged off consumer medical accounts receivable of the eleven Portfolios.

3

12. Since the appointment of the Trustee, the Trustee and professionals engaged by the Trustee conducted an investigation of the business affairs of the Debtor to determine whether a reorganization is possible or feasible in this Case. Based on that investigation, the Trustee has determined that a reorganization of this Debtor is not feasible or possible and that this Case should be converted to a Case under Chapter 7 of the Bankruptcy Code.

13. In addition to the many financial challenges faced by the Debtor, Bill Wilson has failed to cooperate and be fully transparent with the Trustee. It appears that Mr. Wilson has diverted cash receipts payable to the Debtor to non-Debtor bank accounts and has failed and refused to account for same. In particular,

   a. The Trustee has asked Mr. Wilson, on numerous occasions, to identify all of the customers of the Debtor. Mr. Wilson has refused to provide this information to the Trustee and the Trustee believes that Mr. Wilson is refusing to provide this information in order to hide and divert receipts from those customers. Complicating this problem is that the Debtor did not identify its customers in its schedules or provide them with notice of this case. This was done with Court approval based on affidavit provided by Mr. Wilson that the Debtor did not owe its customers any money and that they were not creditors. *See* Doc No. 79.

   b. The Debtor's largest customer, F. Schumacher & Co. ("**Schumacher**"), is known to the Trustee because Schumacher is part of the Flock portfolio. Although the vast majority of receipts from Schumacher were processed through Allgate, certain funds were paid directly to the Debtor by Schumacher. In particular, the Trustee was advised that Schumacher would make direct payments to the Debtor of funds received directly by it from consumers. The Trustee requested contact information

4

for Schumacher in order to verify this information, however, Mr. Wilson refused to provide to the Trustee and demanded that the Trustee not contact Schumacher. The Trustee's counsel then contacted Schumacher's general counsel directly and obtained a report from Schumacher showing that Schumacher paid the Debtor $205,658.60 since the Petition Date. The Trustee has not been able to verify those funds being deposited into a DIP Account. The Trustee has demanded that Mr. Wilson account for these funds, including identifying the accounts in which they were deposited, but Mr. Wilson has refused to provide this information to the Trustee. More specifically, the Trustee has 5 cleared checks totaling more than $75,000.00 from the fall of 2024 that Mr. Wilson has refused to identify where the funds were deposited. The back of the checks are not clear, but the Trustee has not identified any corresponding deposits in the Debtor's bank accounts.

c. The Trustee has been contacted by TikTok, one of the Debtor's largest clients. TikTok has advised the Trustee that, contrary to Mr. Wilson's claims, it was in fact owed money on the Petition Date and has asserted that it was not provided with notice of the bankruptcy or of the various orders entered by the Court during this case. Based on the information provided by TikTok, the Trustee believes that Mr. Wilson knew or should have known that his affidavit located at Doc. No. 79 was false when made. TikTok has advised the Trustee they have a claim for over $230,000 and Wilson has acknowledged the amount is at least $160,000 but has not provided any report of the amount due TikTok.

d. Upon the appointment of the Trustee, the Trustee demanded that Mr. Wilson obtain the Trustee's approval for all expenditures. Mr. Wilson has violated this instruction

5

        on several occasions, although, more recently, Mr. Wilson has obtained approval for payroll and other payments from the Trustee.

    e. The Debtor's business, collection of consumer accounts, generally requires state and/or local licensing in states in which collection activities occur. The Trustee has attempted to determine whether the Debtor is properly licensed and but, again, has not received cooperation from Mr. Wilson in determining licensing status and is concerned that the Debtor's business is not properly licensed. The Trustee is very concerned that the Debtor is not properly licensed to conduct business.

14. In addition to these issues, the Trustee and the accountants and other professionals engaged by the Trustee attempted to determine whether the Debtor's business is salvageable. In an effort to determine whether a confirmation of a plan is feasible in this case, the Trustee and professionals of the Trustee had numerous discussions with Allgate, Flock and Libertas regarding the collection of their collateral, of which the Estate receives only ten percent (10%). Based on recent collection information, the Trustee does not believe that the remaining value of the portfolio is sufficient to support plan payments or, indeed, to pay Chapter 11 Administrative Expenses. Indeed, the Trustee is concerned that the Chapter 11 Bankruptcy Estate is administratively insolvent. Among the outstanding, unpaid expenses are: (a) US Trustee fees; (b) the Debtor's bond; (c) amounts claimed by TikTok; and (d) professional fees of the Debtor's former counsel in addition to the professional fees accruing to the Trustee, counsel for the Chapter 11 Trustee, and other professionals engaged by the Chapter 11 Trustee.

15. The Trustee is not aware of any potential party willing to finance the operations of the Debtor through confirmation of any plan of reorganization nor are there any ready, willing or able buyers prepared to purchase the business of the Debtor as a going concern. It may be possible

to liquidate the Debtor's assets and the Trustee is in negotiations with Flock and Libertas regarding this. Moreover, given Mr. Wilson's diversion of funds and refusal to provide critical information, he cannot be trusted to continue to operate the Debtor's business. The Trustee does note that Mr, Wilson has transferred funds to the Debtor to satisfy payroll and operating expenses of the Debtor. However, the Trustee does not know where these funds are coming from and believes that that they may be funds which should have been paid directly to the Debtor. There is no evidence that the Debtor can both pay its operating expenses and fund a plan of reorganization.

16. In the business judgment of the Trustee, the status of the Debtor makes reorganization highly unlikely, if not impossible, and conversion is the best option to stop the losses incurred in the operation of the Debtor and in the best interests of the Debtor. There is little reason to continue to administer this Case in Chapter 11.

17. At this juncture, the Debtor has no unencumbered assets to use in a reorganization and attempting a reorganization would require significant compliance challenges with little, if any, benefit to any party. The only assets in the estate—other than the Debtor's share of collections and any carve-out, amount surcharged or otherwise retained by the Trustee to satisfy outstanding administrative expenses—may be avoidance claims, claims for misconduct, claims for diverting funds otherwise due to the Debtor, and outstanding accounts receivable.

18. With respect to the portfolio, while the original version of the Settlement Agreement with Flock and Libertas provides that the 10% share of collections due to the Debtor would be lost upon conversion, the Trustee has reached an agreement with Flock and Libertas to amend the Settlement Agreement such that the Estate's right to the 10% share would not be lost on conversion. The Trustee has filed a Motion to Approve this modification at Docket No. 245.

7

Thus conversion of the case will not impair the Debtor's existing rights to a share of the proceeds from this portfolio.

19. In short, it is in the best interests of Debtor to wind down the business and liquidate its remaining assets, which consist of limited hard assets and are primarily accounts receivable and litigation claims, as efficiently as possible and return on-going collection accounts to the customers.

## RELIEF REQUESTED

20. By this Motion, the Trustee requests that the Court convert the Chapter 11 Case of the Debtor to a case under Chapter 7.

21. Due to mounting expenses, the Trustee further requests that the Court set this Motion for hearing and determine the Motion on an expedited basis.

## BASIS FOR RELIEF

22. Section 1112(b)(1) of the Bankruptcy Code provides, in pertinent part, that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 . . . for cause." 11 U.S.C. § 1112(b)(1). The term "cause" includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4).

23. The status of the operations of the Debtor "provides under a totality of the circumstances, reasonable grounds for 'cause' under section 1112(b)(1)—that is, 'continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation' constitute cause under section 1112(b)." *In re Great Am. Pyramid Joint Venture*, 144 B.R. 780, 791 (Bankr. W.D. Tenn. 1992) (conversion would best serve the interests of creditors where the purposes of chapter 11 to encourage financial restructuring would not be served when there is no business left

8

to reorganize). "Without a reasonable amount of assets and a feasibly operating business, there is no logic in continuing under Chapter 11 . . .. To establish a reasonable likelihood of reorganization, the proposed rehabilitation must be more than a nebulous venture." *In re Tracey Serv. Co., Inc.*, 17 B.R. 405, 409 (Bankr. E.D. Pa. 1982) (finding that there was no realistic possibility of rehabilitating debtor that was not generating income and had no business premises, inventory, equipment, employees, or office).

24. Soon after being appointed, the Trustee directed his counsel and accountants to conduct an investigation to determine whether a reorganization of the Debtor was possible in this Case. The Trustee and his advisors communicated and consulted with secured creditors and their counsel, Allgate, and former counsel for the Debtor and requested certain information from Bill Wilson as a representative of the Debtor. Representatives of the Trustee have investigated potential assets of the Debtor that could potentially be used for a reorganization of the affairs of the Debtor. The Trustee also consulted with other creditors in this Case and conducted a partial review of the incomplete books and records of the Debtor and of its financial performance.

25. This investigation has revealed several major challenges to a reorganization of the Debtor that indicate that the prospect of a successful reorganization is so unpromising that it is not warranted to permit the Case to proceed to confirmation with the attendant costs and unfair delays. First, the current operations of the Debtor are unable to satisfy from revenue the operating expenses of the Debtor. Indeed, the Debtor is unable to pay its employees and rent from current operating revenue. Ultimately, the Trustee determined that attempting to maintain operations will be both expensive and subject to a high execution risk. Moreover, the Debtor has stated in writing to the Truste that if the customers know about the bankruptcy, they will cancel collection contracts. And, Wilson has not provided information for the Trustee to verify that collection of customer funds by

9

the Debtor are actually being paid to the Customers. The Trustee will not move forward in a situation where the customers/ creditors do not know about bankruptcy. It is difficult to imagine a more difficult situation to formulate a plan of reorganization.

26. Second, the Debtor does not have a viable financial source to finance to continue the operations of the Debtor primarily for the benefit of secured creditors, attract and pay employees, or to even pay expenses of the Case. The Trustee has not identified creditors or lenders willing to offer credit or financing to the Debtor in a case administered for the benefit of secured creditors. The absence of sufficient financing or benefit to parties other than secured creditors remains a significant impediment. Under the circumstances, the Debtor does not appear to have the financial ability or justification to continue its operations.

27. Third, the liabilities of the Debtor are unclear given the status of the Debtor and proceeding under such circumstances poses substantial risk. For example, continuing operations would pose significant regulatory risk primarily for the benefit of secured creditors with little corresponding benefit to the Debtor or other creditors in this Case. The professional fees associated with continuing operations may be significant and the Trustee is very concerned about the potential liabilities that may arise if Estate continues business operations of the Debtor.

28. Fourth, while the preliminary review of the financial information of the Debtor indicates that the operations of the Debtor were impaired by funds being diverted away from the Debtor, the Trustee believes that the business of the Debtor may not be financially viable. As an initial matter, there are significant concerns regarding the valuation of the Portfolios and that the business of the Debtor may suffer more by operating in an uncertain economic and highly regulated environment. In addition to on-going losses, the Debtor will incur significant professional fees

during the Case. Absent a cash infusion or a cash payment from the sale of the assets of the Debtor, the Debtor would not be able to pay the professional fees in the Case.

29. Fifth, the most significant asset potentially available to the Debtor may be claims for misconduct, potential avoidance actions and the collection of outstanding accounts receivable. Such actions do not require the substantial risk and expense associated with attempting to continue to reorganize the operations of the Debtor where the Case is being administered primarily for the benefit of secured creditors.

30. Under the circumstances, the Trustee believes that sufficient cause exists to convert the Case to a proceeding under chapter 7 because: a) continuing the operations without adequate financing will cause a substantial or continuing loss to or diminution of the Estate; b) the Debtor does not have a reasonable likelihood of rehabilitation and c) there does not appear to be any party willing to finance or purchase the business of the Debtor as a going concern. In the business judgment of the Trustee, the administration of the Case will be more effective and more efficient under Chapter 7 as the substantial or continuing loss to or diminution of the Estate makes reorganization unlikely. Moreover, the elimination of certain expenses unique to Chapter 11, such as U.S. Trustee fees and expenses related to the filing of monthly financial reports, should minimize expenses and ensure a maximum recovery to the creditors of the Estate of the Debtor. Indeed, the Trustee can still seek to sell the remaining assets of the Debtor to potential buyers. The Trustee believes that: a) the limited resources of the Estate will continue to be wasted if the Debtor remains in Chapter 11 since continuing the Case in Chapter 11 is simply an expensive exercise of futility for the benefit of secured creditors; and b) conversion of the Case to a proceeding under Chapter 7 is in the best interests of the Estate, the Debtor, and its creditors.

31. Given the potential for further Chapter 11 administrative expenses that may otherwise be unnecessary, an expedited hearing on this Motion is in the best interests of Debtor and the creditors of the Debtor. As such, the Trustee further requests that the Court enter an order (the "**Order and Notice of Hearing**"), substantially in the form attached hereto as **Exhibit A**, that: a) schedules an expedited hearing on the Motion; b) approves the notice procedures requested herein in connection with the Motion; c) requires any response or objection to the relief requested in the Motion be filed and served at least one (1) business day prior to any scheduled hearing date set by the Court; and d) grants the Trustee such other and further relief as is just and proper.

32. Pursuant to Rule 9006(c)(1) of the Bankruptcy Rules, "when an act is required or allowed to be done at or within a specified time . . . , the court for cause shown may in its discretion with or without motion or notice order the period reduced."

33. The Court may also act to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). "The basic purpose of Section 105(a) is to assure the bankruptcy court's power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 *Collier on Bankruptcy* ¶ 105.01 (16th ed. 2015).

34. In light of the foregoing, the Trustee submits that consideration of this Motion on shortened notice as requested herein is justified under the facts and circumstances presented and is in the best interests of the estate and its creditors. Accordingly, the Trustee requests that the Motion be heard at the earliest convenience of the Court. The Trustee further requests that any response or objection to the relief requested in the Motion be filed and served at least one (1) business day prior to any scheduled hearing date set by the Court.

35. Copies of this Motion shall be available as follows: a) upon request of counsel for the Trustee and b) in the office of the Clerk, U.S. Bankruptcy Court between 8:00 a.m. and 4:00 p.m. or online anytime at http://ecf.ganb.uscourts.gov (registered users) or at http://pacer.psc.uscourts.gov (unregistered users).

36. Counsel for the Trustee shall serve a copy of the Order and Notice of Hearing granting this Motion by hand delivery, facsimile, electronic mail (if consented to by the recipient), overnight courier (when a street address is available), or by next-day United States mail upon: a) the Office of the United States Trustee; b) counsel for the Debtor; and c) parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no further notice is necessary[what about the unknown current customers]

WHEREFORE, Trustee requests that this Court enter the Order and Notice of Hearing and: (a) grant this Motion; (b) set this matter for hearing on an expedited basis; (c) enter an order converting the Chapter 11 Case of the Debtor to a proceeding under Chapter 7 pursuant to 11 U.S.C. §1112(b) effective as of the date of the filing of this Motion; (d) authorize the Trustee to continue as the Chapter 7 Trustee in the Case until further order of this Court; (e) direct the appointment of a Chapter 7 trustee for the bankruptcy Estate of the Debtor; and (f) grant the Trustee such other and further relief as the Court deems just and proper.

Date: March 6, 2025.

Respectfully submitted,

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305

13

(404) 926-0053
hsewell@sewellfirm.com
COUNSEL FOR THE TRUSTEE

14

<u>EXHIBIT A</u>

**Proposed Order and Notice of Hearing**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 11 |
| **ARC MANAGEMENT GROUP, LLC,** | : | |
| | : | Case No. 23-61742 - BEM |
| <u>              Debtor.              </u> | : | |

**<u>ORDER SHORTENING NOTICE AND SCHEDULING EXPEDITED HEARING ON EMERGENCY MOTION BY CHAPTER 11 TRUSTEE FOR AN ORDER CONVERTING THE CHAPTER 11 CASE OF THE DEBTOR TO A CASE UNDER CHAPTER 7 AND REQUEST FOR EXPEDITED HEARING</u>**

**PLEASE TAKE NOTICE** that S. Gregory Hays, as Chapter 11 Trustee ("**Trustee**") for the bankruptcy estate (the "**Estate**") of ARC Management Group, LLC, Debtor (the "**Debtor**") in the above captioned case (the "**Case**"), has filed an *Emergency Motion by Chapter 11 Trustee for an Order Converting the Chapter 11 Case of the Debtor to a Case under Chapter 7 and Request for Expedited Hearing* [Doc. No. __] (the "**Motion**") in which the Trustee requests that the Court hear and consider the request in the Motion to convert the Case on an expedited basis. All capitalized, but undefined terms used herein shall be given the meaning ascribed to them in the Motion. Upon consideration of the Motion, and the other matters reflected in the record and

after due deliberation thereon and good and sufficient cause appearing therefor, the Court hereby Grants the Motion as set forth below.

IT IS ORDERED AND NOTICE IS FURTHER GIVEN that a hearing (the "**Hearing**") on the Motion will be held before the Court at ___:00 a.m. on **March _____, 2025**, **in Courtroom 1402, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303**, which may be attended in person or via the Court's Virtual Hearing Room. You may join the Virtual Hearing Room through the "Dial-In and Virtual Bankruptcy Hearing Information" link at the top of the homepage of the Court's website, www.ganb.uscourts.gov, or the link on the judge's webpage, which can also be found on the Court's website. Please also review the "Hearing Information" tab on the judge's webpage for further information about the hearing. You should be prepared to appear at the hearing via video, but you may leave your camera in the off position until the Court instructs otherwise. Unrepresented persons who do not have video capability may use the telephone dial-in information on the judge's webpage.

IT IS ORDERED AND NOTICE IS FURTHER GIVEN that your rights may be affected by the Court's ruling on the Motion. You should read these pleadings carefully and discuss them with your attorney, if you have one in this Case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the Hearing and file on or before **March _____, 2025** (the **"Objection Deadline"**), a written response to the Motion with the Clerk at the address below. If you file a written response, you must attach a certificate stating when, how and to whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk before the Objection Deadline. The address of the Clerk's Office is Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive,

2

Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at Law Offices of Henry F. Sewell, Jr., LLC, Attn: Henry F. Sewell, Jr., 2964 Peachtree Road, NW, Suite 555, Atlanta, Georgia 30305;

IT IS FURTHER ORDERED that copies of this Order and Notice of Hearing and the Motion shall be available as follows: 1) upon request of counsel for the Trustee; and 2) in the office of the Clerk, U.S. Bankruptcy Court between 8:00 a.m. and 4:00 p.m. or online anytime at http://ecf.ganb.uscourts.gov (registered users) or at http://pacer.psc.uscourts.gov (unregistered users) and that no further notice shall be required.

IT IS FURTHER ORDERED that counsel for the Trustee shall serve a copy of this Order and Notice of Hearing and the Motion by hand delivery, facsimile, electronic mail (if available), overnight courier (when a street address is available), or by next-day United States mail upon: 1) the Office of the United States Trustee; 2) counsel for the Debtor; and 3) parties requesting notice pursuant to Bankruptcy Rule 2002. A copy of this Order and Notice shall also be mailed to all creditors and parties in interest. No further notice is necessary and counsel for the Trustee shall promptly file a Certificate of Service with this Court evidencing such service.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order and Notice of Hearing.

***END OF DOCUMENT***

Prepared and Presented By:

LAW OFFICES OF HENRY F. SEWELL JR., LLC

**/s/ Henry F. Sewell, Jr.**
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com
*Counsel for the Trustee*

## DISTRIBUTION LIST

Henry F. Sewell, Jr.
2964 Peachtree Road, NW, Suite 555
Atlanta, Georgia 30305

Office of the United States Trustee
362 Richard B. Russell Federal Bldg.
75 Ted Turner Drive, SW # 362
Atlanta, Georgia 30303

S. Gregory Hays, Trustee
Hays Financial Consulting, LLC
Suite 555
2964 Peachtree Road
Atlanta, GA 30305

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served the foregoing *Emergency Motion by Chapter 11 Trustee for an Order Converting the Chapter 11 Case of the Debtor to a Case under Chapter 7 and Request for Expedited Hearing* was served via the Court's ECF system to all parties registered with the system who have filed appearances and requested notices

Office of the United States Trustee
362 Richard B. Russell Federal Bldg.
75 Ted Turner Drive, SW # 362
Atlanta, Georgia 30303

This 6th day of March, 2025.

Respectfully submitted,

LAW OFFICES OF HENRY F. SEWELL JR., LLC

**/s/ Henry F. Sewell, Jr.**
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com

COUNSEL FOR THE TRUSTEE